Case number 3-170-553, Teresa Kreps, special representative of the state of Martin Arends, deceased. Talent by Robert Schmeider, v. BNSF Railway Company, athlete by Richard Sykes, Jr. Counsel, please proceed. May it please the court, my name is Bob Schmeider, and counsel, I've been with them on many occasions here. I represent the plaintiff in this particular case, your honor, and unfortunately this is a case in which the plaintiff, who was a railroad worker, and therefore is under F.E.L.A. law, he died and had substituted in Teresa Kreps in this particular case. The date of the accident was January 31st, 2013, and he was a person that ran a blue truck, a heavy truck out on the track, and he was coming back that day into the yard at Bushnell. And in the process of getting out of his truck, he claims that he goes into a three-point stance, which is required by the railroad. In other words, you have to have two hands out, you just can't go stepping off of a truck. And in the process, he steps off of this big truck, he has one hand on the side thing, sort of like a side rail over here that you hold on and you climb into a truck, and over here he had it on the door in that area. As he stepped down, he claims that his foot rolled on him and he grabbed immediately and tried to keep himself from falling and injured his shoulder. Now, his deposition was taken in this particular case, and basically he made this comment in the deposition. I got out of my blue truck, I had my three-point contact, and I stepped down on steps, as you can see in Exhibit 1, and I put my foot down, my right foot down, on the ground, and as I stepped on the rock, it rolled my foot and tore my tendon. I want to read one more thing, if I may, off this. The plaintiff also testified in that deposition, I didn't step on it, meaning the rock squarely, I stepped off to the side and that's when my foot rolled. The plaintiff also testified that there were big rocks scattered throughout the compound where he was parking his blue truck. Now, we are dealing with a special law, a federal law, and it's an F.E.L.A. law by the federal government since 1908. Regular workers don't get workers' compensation, so the Congress of the United States decided that they would have these special laws. Throughout the ages, the courts, the United States Supreme Court, has sort of lessened the burden. In essence, there's really no issue of proximate causation in the case. It's any cause, no matter how small, and in this particular case, what has happened here, the trial judge did a very good job of going through all the depositions. I have no question about the fact that she didn't work hard and that she tried to do the right thing, but I think she misinterpreted what the federal law is in this particular case. And if I may, I'd like to read you just a section of two cases which I cited in my brief. One is called Webb v. Illinois Central, and this is 77 Supreme Court 451, and it's a 1957 case. Actually, it follows the Rogers case, if you were interested enough to pull up the Rogers case in the Supreme Court right behind it as well. But anyway, this is what the court said. In passing upon whether there is sufficient evidence to submit an issue to the jury, we may look only to the evidence and reasonable inferences which can support the case of a litigant against whom a peremptory instruction had been given. In this particular case, a peremptory instruction, in other words, the jury was told to decide for the defendant in this case. So in other words, it's saying this. Look, if there's anything here in this particular case which tends to support the case of the litigant, then that is sufficient for that case to go to the jury. And there is another case, and it's called Wilkerson v. McCarthy, and that is an FELA case. And you might ask, why is it McCarthy and not a railroad? It's because I think it went in receivership as a result. And in that particular case, this was a case out of Salt Lake City in which the trial judge instructed the jury that you shall return a verdict for the defendant. It went up to the Utah Supreme Court, and the Utah Supreme Court went through and examined the facts and analyzed everything and tried to do everything and came to the conclusion that the trial judge was wrong. But there was one dissenting justice in that particular case. And in that particular case, the court made this statement. The opinion of the Utah Supreme Court strongly indicated, as the dissenting judge pointed out, that its finding of an absence of negligence on the part of the railroad rested on the court's independent resolution of conflicting testimony. In other words, the court went through and said, okay, we've got this, we've got that, so we'll resolve it. We'll be the judge of the credibility of the various people. This court, the Supreme Court of the United States, has previously held in many cases that when jury trials are required, courts must submit the issue of negligence to a jury if evidence might justify a finding either way on the issues. And it further said, to submit an issue to the jury, we need look only to the evidence and reasonable inferences which tend to support the case of a litigant against whom a jury instruction has been given. In other words, we look in favor of the litigant. If there's something there that helps the litigant in this particular case, then that's all that's required, and a motion for summary judgment should be denied. Now, I go on in this particular case, and as I indicated to you, the trial judge granted an order in this case. And one of the interesting things about the trial judge's order in this particular case is this, and she titles it this way. Evidence which supports presence of a large rock. In other words, here we have the trial judge going through, looking out, and she did a very fine job. I have no criticism of that. But she says, here we have the evidence of a very large rock, and she goes through the depositions and points this out. Then she goes over and basically states that, previous to that, she makes the comment, evidence which supports the absence of a large rock. So now we have the court, the trial court, trying to weigh things here in this particular case. In other words, the trial court is going to make a determination as to who do you believe in this particular case. Should I believe the doctors who didn't get a report from this? Should I believe his fellow workers or the like? Or do I believe the plaintiff in this particular case? Well, she came down on the side of the railroad in this case, and we are saying, in an FELA case, that is wrong. Let's speak to what your client said. Your client said I didn't see a rock. Your Honor? Your client said he didn't see a rock. That's true. Can I ask a question? A rhetorical question, if I may. Okay, what happens if my client gets out of that truck, steps on this rock, hits his head, and doesn't come through? Now, he doesn't see a rock. Does that mean he has no case? No, I don't think so. No. In other words, I think if there is enough circumstantial evidence in this particular case, you don't have to see the rock in this case. So that's why I respectfully submit that Judge Benson was wrong in deciding this particular case, that under FELA, the courts have bent over backwards, the Supreme Court of the United States, to federal courts. And by the way, you know, Illinois recognizes the fact that it's the authority of the federal courts, the Supreme Court, or the circuit courts, that speak authoritatively on this, and that Illinois is bound by that. We say sometimes that the federal law deals with substances where state law deals with procedures. But in this particular case, this is the granting of a summary judgment in this case, in which, you know, we all may sit here and say, boy, that's very weak, very weak. But if it's enough, it's any cause, no matter how slight, if that's enough, the courts have said this should go to the jury. Tell me why it isn't an imaginary rock. Why isn't this an imaginary rock? It could be a hole. He could have just rolled his foot without a rock, without a hole. Your client says, I didn't see a rock, I never saw a rock. When asked how he knew he had stepped on it, he said, well, I had to have stepped on it. Is that true? Yeah. Why should, I don't mean, I'm troubled that there is not a question of fact here because your client didn't create one. Well, here's the thing. If the client says that he stepped on a rock, I mean, there was parts in his deposition, okay? I got down and I put my right foot down on the ground as I stepped on a rock and I rolled my foot. So we have testimony there, Your Honor, that he did say this. Now, I know the court's going to come after me and say, well, he said other things in other places. That's true. But doesn't that go to the credibility of the witnesses in this particular case? We may lose the control of a jury on the issue of credibility, but I think we've got the right to ditch this jury in this case. That's what I'm saying. And I wanted to mention one other thing. In the Rogers case, the Supreme Court stated in there that too often we have been granting certiorari to the United States Supreme Court on FDLA cases because the courts are ignoring, and I don't mean state, I mean state and federal courts, have been ignoring the fact that the plaintiff has the right to a jury trial, especially when there is a question of fact. I mean, if we look at something, I still quote it in two places in the brief, in Gallick, which was the case out of Cleveland, and there was this pound out there that contained bugs or something like this. But the plaintiff wasn't working. He was not at that pound. He was away from it. And the next thing you know, he feels something up his leg. He slaps his leg, and he sees the bug fall out. Now, the Ohio Supreme Court got a verdict, by the way, and the Ohio Supreme Court took it away. The Ohio Supreme Court, I think, refused to take it. It went up to the United States Supreme Court, and they said, uh-uh. That's a question of fact for the jury about whether or not the ring was providing them a safe place to work. Then I hear some plaintiffs say, well, but there was a bug. You could see the bug. Whose bug was it? Was it the railroad's bug? Was it the bug from the – we don't know where that bug came from. And yet the United States Supreme Court felt that the jury had the right to make this determination one way or the other in this particular case. And the other case I thought was very interesting, I think, is Ulfick, U-L-F-I-C-K, which sort of surprised me as being a plaintiff's attorney. I mean, I must say that what a guy is painting in there, and seven or eight days later, he becomes nauseous, trips down and falls, and the court said – that was the Seventh Circuit, by the way – and the court has said, well, in that particular case, that's enough before it can get to the jury in that particular case. There's not a cause of action if he just trips. I'm sorry, if your client just tripped. Okay, if my client just tripped, but he's coming out of a truck and he's got hands on both, and the only thing he says is his leg turned on him and he didn't fall to the ground, but he ruptured the tendon. And he says that this rupture of the tendon was caused by a rock. And he said it in several places in his deposition. And then, later on, counsel, you know, very astutely asked him, did you see the rock? No, I didn't see the rock, you know, this and that. But those are questions of fact for a jury. You're determining credibility in this particular case, as I see it, Your Honor. But – Two minutes, please. One minute? Well – Two minutes. Two minutes? I apologize, Your Honor. That's okay, that's okay. But anyway, as I was going to tell you, in that post-late case that – and we also got this Lavender v. Kern case, which I thought was interesting, where did the guy get hit by the male hook on a thing and kill him? Or was he murdered? Or what happened to him? And the court said, hey, look, the jury made the decision in this particular case. And what I thought was interesting in that case, the Supreme Court said, yes, there is evidence that can show that this is mathematically impossible for this man to get hit by this male hook. Mathematically impossible. But that's besides the point because the jury has made the decision in this particular case. And they upheld it in that case. So I think that the Hollith v. Erie of Lackawanna has to show just a minimum of evidence in order to defeat some re-judgment in this particular case. And by the way, in an FALA case, the circumstantial evidence can be used to prove a case in an FALA manner. Does anybody have any questions or should I be quiet? I think I should be quiet. Thank you. And I apologize for my... Counsel. Good afternoon, Your Honors. May it please the Court. Mr. Schneider. At the outset, I think I would like to just say a couple things to clarify. First of all, it's just something I just thought of in case anybody's thinking, and probably nobody's thinking this, Mr. Arends did not die from this incident. It was a completely different thing. But the briefs made that clear. Right, okay. I think it's important to point out at the outset, and we too think the trial court did a very fine job with this case and examining this case and wrote a very distinct and all-encompassing opinion, did not ignore the federal law, cited to the federal law, recognized the lesson, burden of proof that exists in an FALA case, and very succinctly stated what the issue here is. The only issue, there is no other issue, and the only issue here at summary judgment and before this court today is whether there is any evidence to support plaintiff's theory that plaintiff's right foot sat down on a rack causing his injury. That's the only issue. She stated it succinctly, and that's all. There's no other issue here. There's no claim of a hole in the ground. There's no claim that the procedures were bad. There's no claim that there was anything wrong anymore with any of the equipment that he was using. Nobody ever had eyes on Ms. Rock. Nobody ever had eyes on Ms. Rock. Now, that's not something, some tagline that I came up with for our argument today. That was the insight made by Judge Benson in the argument on this case, in her reviewing the evidence. And if you read the argument, the oral argument that took place that day, and I even have the page here in my notes, it's on the proceedings, Record of Proceedings, page 22 and 23. Mr. Schmieder conceded that, that nobody ever had eyes on a rock here. So, what do we have? The purpose of the summary judgment is not to try a question of fact. It's to determine if one exists. I didn't make that up either. This Court has said this, that very thing before in its opinions, and its opinions even relating to my client, the BNSF Railway. Well, there are different ways to proceed. Sure. But I think that way... There's different ways to have a perception of some object. One is by sight. Yes. The other one is by... Feeling? Feeling. Feeling it. Touching. I'm glad you asked me that. There's no testimony here to that effect, though. Mr... When the whole issue came up in his deposition where he initially said, you know, wide open question, what happened? He says, well, I stepped up. I had my three-point contact. I stepped down and I rolled my... I stepped on a rock and rolled my foot and hurt my tendon. Okay. If you take that just in isolation, that would appear that, yes, he's saying he stepped on a rock. But then it becomes clear as you go out in the deposition and he denies three times that he ever saw a rock. And then another wide open question is asked, well, how do you know then that you stepped on a rock? And all that he said, he could have said that that was his perception, but he didn't. He could have said, well, I felt, you know, I felt something rumble under my foot. Yes, but he didn't. All that he said was, well, it had to be because my foot didn't come down flat. He never said that. So that's not part of the evidence. So a perception like that is not part of the evidence. And then the question is asked, well, did you see it after? And, you know, he's standing right there and never saw it. Nobody ever recovered it. Plus the other witnesses that were there who testified by way of affidavits said that they never saw a rock. So to answer the simple question, as Judge Benson did, there is no evidence of this illusory rock ever existing anywhere. And there isn't a perception like that. And if he had testified to a perception like that, we probably would have gone out in the deposition, well, where is the rock? Why didn't you pick it up? Or why didn't you note it in your reports? That wasn't explored because the only answer he gave to that wide-open question was, well, it had to. An assumption, speculation, which is really not evidence at all, which is what I'm getting to with my argument. But when you look at is there a question of fact here, you have to look, of course, at the admissible evidence. And there's a whole lot more, of course, than Mr. Schmieder talked about in his argument. And maybe it's because he just didn't have time. And maybe he'll address this on rebuttal. But there's the fact that he himself, in his personal injury report that he wrote up himself, nobody told him what to write. He wrote, I just, my foot made contact with the ground. There was a sharp pain in my foot, and my foot gave out. Never mentioned anything about a wreck. He then did another handwritten statement by himself that he wrote out what happened. Right foot made contact, quote, felt sharp pain, and that resulted in foot giving out. Left arm was supporting his body, and that's why he felt some stretching in his left arm. So then in a conversation with his supervisor, all of this is not contradicted. He told his supervisor, had a sharp pain which caused the foot to give way. Nothing about a wreck whatsoever. And these are contemporaneous statements, statements he made that day or the day after. These are admissions. This is substantive evidence of what occurred on that day. It's substantive evidence that says there was no wreck. Then there's the eyewitness testimony, Mr. Lipes, who saw him step down from the truck. Mr. Aaron said he did something to his foot. He's walking around and said he doesn't know what he did to his right foot. But he said, I didn't step on a rack. I stepped on a flat surface. And Mr. Lipes doesn't see any rack in the area. Keisha Pugh, she was on the other side of the truck when he stepped down. She heard Mr. Aaron say that I stepped on or did something to my foot, and she came around and looked at the ground, and there's nothing there. Nothing there, no large racks around where he stepped down. And for purposes of the act, there has to be some conditioning. Yes, there has to be negligence on the part of the railroad in that it caused in whole or in part or resulted in whole or in part in the injury to the plaintiff. So we have a situation here where, in the absence of this rack, we don't have either one. We don't have negligence. We don't have causation. We've got a person that simply stepped down and injured himself, and that's not part of the FVLA. You have to have, it's a fault-based system. To rephrase Justice Carter's question, though, what we need in this case is a question of fact. Right.  Exactly. Normally, questions of fact are one side saw this and the other side didn't see this. Right. But in this situation, we have the sole source of the rack information has contradicted himself. He did. So you have conflicting evidence from the complainant. Under those circumstances, the judge has to decide whether there's a pigeon bra amount of fact that will support the claim. Right. I think it's important to point out that the plaintiff is internally inconsistent with what he said before, but our argument is that there is no fact on the other side because his statement that he made to the effect of, I stepped on a rack, once you flush that out and bring that out of isolation as was done in the deposition, and he says, is finally asked, well, how do you know you stepped on a rack if you never saw one? And he says, well, I had to have done it because I didn't come down on my foot flat, which is just pure speculation. And if this played out in a trial court, as we argued in our brief, the judge would have to strike his testimony that he stepped on a rack as being totally lacking in any foundation whatsoever. How we measure whether there's a question of fact, though. Well, I'm giving that as an example. When you really get down and look at it, I'm just looking at it in a little different way. The judge probably would not even allow that. So the injury itself corroborates the injured party's statement that he stepped on something. Is that corroboration enough to create a factual issue? I would say no because there is stepping down off a truck and feeling sharp pain and then your leg giving out doesn't necessarily imply that you had to have stepped on something. I think Judge Benson pointed out, at least in her argument, it may have been in a ruling too, that there's no expert testimony here that says in order to have this kind of a tendon injury, you have to have twisted your foot or leg at something. Nobody's saying this injury that he had, this very injury that he had, couldn't be simply by stepping down. I think things like that happen to people all the time. You have a weak tendon that's been building up over years and years and years, and you step down and finally it gives out, even though you didn't do anything really adverse to it. What I'm saying is that there's no evidence here that suggests or supports that inference could be made. So I was talking about some additional statements of Mr. Arends to all his treating physicians. It's all in a brief, of course, but for years there was never a wreck. He just said, he kept telling his physicians, my foot just gave out. None of the physicians thought that they're going back to the point I just made. None of the physicians whose depositions were taken seemed to ever express that, well, an injury couldn't happen that way, because I think they think an injury certainly can happen that way. So all the doctors summarized that. Then, you know, the positive admissible evidence is Plaintiff himself, three times denying ever seeing the wreck, before or after his injury. So that is the sum total of the admissible evidence. I would submit that nobody has eyes on the wreck. I just keep coming back to that, because that is the sum total of the admissible evidence. He just stepped down and his foot gave out. That is the sum total of what the admissible evidence shows. His statements himself, again, if you left the one statement that I stepped on a wreck in just isolation, perhaps there would be a question of fact. But that's not what the testimony is. The testimony is that he never saw it, and his testimony is only speculation that he stepped on a wreck. It is not supported by any evidence whatsoever. The law, I think everything that counsel, Mr. Schmader, said about the law is for the most part true. But the part he didn't mention was that, and it's both federal FELA law and Illinois law, when you look at summary judgment, and that is you can only rely on admissible facts. You can't rely on speculation in order to grant or deny a motion for summary judgment. And so we cited cases in our brief that were in a most similar case. Counsel mentioned the beef. I think it was the bug case. Well, there's no bug in this case, as the trial court pointed out. The case I would suggest that is most on point factually with this case is Holbrook v. Norfolk Southern. And that's the case where the plaintiff contended that he slipped on some oil when he was on a ladder. And he, again, just like here, speculated, well, the oil, I never wear my boots except when I work. And so the oil must have come from one of those oil puddles that are out there in the yard all over the place. But he never said he stepped in one. And so the court held that that speculation, just like the speculation here that I must have stepped on a rock because my foot didn't come down flat, it just doesn't cut it. So in the end, yes, if you have any facts showing that an injury occurred and was the result of negligence of the railroad, yes, if there's any evidence. Here, no evidence exists. That's just the bottom line. No evidence exists. No one ever had eyes on this rock. So we're asking that that judgment be affirmed. Thank you so much. Judge, with all due respect, I meant the trial court basically set forth questions, evidence that supports a large rock. So you stepped down on the ground. Exhibit 5, you said you stepped on a rock and you rolled your ankle. That's correct. No, no, I rolled my foot. You rolled your foot. That's correct. And when you rolled your foot, try to describe that for me. It goes at an angle. So the outside of your right foot instead of the sole, the outside of the right foot was on the ground, on the ground surface. Yes, and the outside of the foot was on the ground surface. Yes, that's correct. And do you know why that happened? I stepped on a big rock, okay? And I was stepping on a big rock and I didn't step on it square. I stepped off to the side. And when I stepped off to the side, I rolled my foot, okay? And then did you see the big rock? And the answer is no, he didn't see the big rock. But did you see a rock after you stepped down? No. Did you ever see it? No. How do you know if you stepped on it? Well, I had to step on it because my foot didn't come down flat on the deposition. You know, I can step on a rock and not see it. And I know there's something underneath there, my foot, in that particular case. So I don't think you have to see the rock in this particular case. So that may be the case, but an injury alone is not sufficient proof of negligence. That's correct. I agree. So aren't you asking us to – there has to be some evidence of negligence. He didn't see a rock, but he could have seen something else. It could have been uneven ground or – We just can't – I'm having trouble connecting the dots on negligence and the causation of the injury. Okay. Judge? So help me. I'll try. I took my lesson back there at my – but let me try to paraphrase it for you, okay? If you need to get something from your desk, you're welcome to. Okay. Okay, now we're going through the right foot and stepping down. Okay. Plaintiff testified he stepped over a big rock. I didn't step on a square, and I stepped off to the side, and that's where my foot rolled. The plaintiff testified that there were big rocks scattered throughout the compound where he was parking the boom truck, and they existed prior to the day of his accident. So the railroad has a duty to provide him a reasonably safe place to work in this. And so if you've got rocks scattered throughout the compound before this time, there is the negligence of the railroad. And then I submit, Your Honor, that it becomes a question of fact for the jury. And – got a question? No. Okay. But anyway, can't you tell us when you step down if your foot's not coming down flat? But that's not speculation. And the fact that he says something to somebody else is not a judicial admission. There may be reason for impeachment later on, but it still becomes a question of fact for a jury to decide who's telling the truth in this particular case. And the issue of the Tandon being ruptured – two things that interest me about the fact counsel said to Tandon. Well, he said, Well, the Tandon could have been old and worn out and stuff like this. I believe that's what his words, but something to that effect. Well, two things. Number one, you take your plaintiff as you find him. That's the first thing. And FELA acknowledges that. And in this particular case, if you're walking a long step on a rock and the next thing you know your Achilles tendon or your other tendon has just blown out, I think you could make a good circumstantial case about having a doctor come in and testify to that. And with regard to witnesses and stuff like this, I don't know where these witnesses – we never took their statements in the depositions, Your Honor, because this came up quickly. But I don't know where they were standing, what they could see, what they could visualize and everything else like this. But the only thing, as I know, that Judge Benson stated, things which support the presence of a large rock. And if there's a large rock out there and they own the safe place to work, then I submit that you only look at that. You don't look at it from the point of view of the ringer. You look at it from the point of view of the plaintiff and whether or not he has submitted a case for a jury to consider. If your client stepped off the boom truck with his eyes closed. Your Honor, I apologize. If your client stepped off the truck with his eyes closed. Yes. Would the railroad still be negligent? Assuming there is a rock there. Assuming there is rocks there? If – that could represent too many things. Because, like, for instance, was he fearful of the rock stepping down or being closed off for robbery? I mean, there's a lot of things that go into that issue there, you know? I mean, I've seen people jump in the middle of the road with their eyes closed, you know? You want us to find or deduce that he didn't see the rock, but it was there because of the injury? Well, initially he says he stepped on a rock, okay? Then later on he changes his story, okay? So, but I think if I stepped on a big rock, a softball-sized rock or a baseball rock, I would know that I'm stepping on something that is not that rock. Does the Court have anything else for me? Thank you very much. I appreciate your patience with my hearing. Thank you. Thank you, Counsel. I look forward to the end of recess and for a change in talent change. And we'll render a decision in the near future. Thank you.